CITY OF LaPORTE, Texas, Petitioner,

v.

William BARFIELD, Respondent.

CITY OF LaPORTE, Texas, Petitioner,

v.

Allen Ray PRINCE, Respondent.

Nos. D–3733, D–3836.

Supreme Court of Texas.

Argued Nov. 4, 1993.

Decided April 27, 1995.

Rehearing Overruled June 8, 1995.

James P. Wallace, Austin, C. Charles Dippel, Houston, for petitioner.

Dale W. Felton, Houston, Timothy Andrew Hootman, La Porte, for respondent.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HIGHTOWER, CORNYN, GAMMAGE, ENOCH, SPECTOR and OWEN, JJ., join.

By statute, a person may not discharge or discriminate against an employee for filing a workers' compensation claim in good faith or hiring legal representation in such a claim. TEX.LABOR CODE § 451.001. Remedies for such retaliation include reasonable damages resulting to the employee, reinstatement to the former position of employment, and injunctive relief. *Id.* §§ 451.002–.003. The two cases before us which we have consolidated for decision raise the issue whether governmental entities' immunity from liability for their actions has been waived for violations of this statute. We hold that immunity has been waived, but only for limited relief.

## I

William Barfield was employed by the City of La Porte as a paint-and-body repairman. He was injured in 1983 and after several weeks returned to work, restricted to lifting no more than fifteen pounds. He filed for and received workers' compensation benefits. His injury was aggravated in 1986, and he again claimed compensation. Fourteen months later, in early 1988, the City terminated his employment. Barfield sued the City for actual and punitive damages, alleg-

ing that the City fired him for claiming compensation benefits. The City contends that Barfield was terminated because he was permanently disabled from doing his job, and that he was employed under a contract which provided for termination in such circumstances. The City also contends that it is protected from liability for such claims by governmental immunity, and it moved for summary judgment on this basis. The trial court granted the City's motion in 1992, but the court of appeals reversed, holding that immunity had been waived by statute. *Barfield v. City of La Porte*, 849 S.W.2d 842 (Tex.App.—Texarkana 1993).

Allen Ray Prince was employed by the City of La Porte as a sewer lift-station operator. He, too, was injured in 1983, undergoing hernia repair surgery as a result. Prince claimed compensation benefits, which the City's carrier denied. Before he was released to return to work, his department superintendent fired him. Later that year Prince sued the City, claiming he was discharged in retaliation for filing a compensation claim. The City contended that Prince was fired for incapacity and misconduct toward other employees. The case was tried in late 1991, nearly eight years after it was filed. The jury found in Prince's favor and assessed actual damages at $100,000. The jury also found that the City was grossly negligent, that such conduct was imputed directly to its governing body, and that punitive damages of $1 million should be assessed. The trial court rendered judgment against the City for damages and interest totaling $1,235,177.82. A divided court of appeals affirmed, holding as in *Barfield* that the City's immunity has been waived. *City of La Porte v. Prince*, 851 S.W.2d 876 (Tex.App.—Waco 1993).

The Texarkana Court of Appeals followed its *Barfield* decision in *Vaughan v. Roy H. Laird Memorial Hospital*, 856 S.W.2d 256 (Tex.App.—Texarkana 1993, no writ). The Dallas Court of Appeals reached the opposite conclusion in *Classen v. Irving Healthcare System*, 868 S.W.2d 815 (Tex.App.—Dallas 1993), *rev'd*, 898 S.W.2d 300 (Tex.1995) (per curiam). To the extent that *Vaughan* con-

flicts with our decision in this case, we disapprove that opinion.

## II

### A

■ A city is immune from liability for its governmental actions, unless that immunity is waived. *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex.1985); *see City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753, 754 (1960). As Barfield and Prince concede, the hiring and firing of city employees is clearly a governmental function. *See City of Dallas v. Moreau*, 718 S.W.2d 776, 779 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *see also Town of S. Padre Island v. Jacobs*, 736 S.W.2d 134, 144 (Tex.App.—Corpus Christi 1987, writ denied) (quoting *Moreau*). Therefore, the City of La Porte is immune from liability for the retaliatory termination claims of Barfield and Prince unless that immunity has been waived.

"[T]he waiver of governmental immunity is a matter addressed to the Legislature." *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). "It is a well-established rule that for the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language." *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980); *accord Welch v. State*, 148 S.W.2d 876, 879 (Tex.Civ.App.—Dallas 1941, writ ref'd); *Texas Prison Bd. v. Cabeen*, 159 S.W.2d 523, 527–528 (Tex.Civ.App.—Beaumont 1942, writ ref'd). The same rule applies, of course, to the waiver of immunity for other governmental entities. *See, e.g., Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989). Thus, we must determine whether the Legislature has by clear and unambiguous language waived municipal immunity for the retaliatory termination claims made in these cases. Unless it has done so, the City is entitled to prevail.

■ One might suppose that this determination would be a relatively easy matter, and it would be, of course, had the Legislature ever stated, to take one extreme, that

governmental immunity for retaliatory discharge claims is waived—in those exact words—just as it would be if, to take the other extreme, the Legislature had never broached the issue at all. In fact, however, what the Legislature has done is somewhere in between. As we shall see, it has used language strongly suggesting a waiver of immunity in contexts in which any other intention is hard to discern. The rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. Legislative intent remains the polestar of statutory construction. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1991). We will not read statutory language to be pointless if it is reasonably susceptible of another construction. *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987); *Perkins v. State*, 367 S.W.2d 140, 146 (Tex.1963). If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived.

With these rules to guide, we examine the history of workers' compensation as it applies to governmental entities.

## B

A few months after the workers' compensation act was first passed in 1913,[1] First

Assistant Attorney General C.M. Cureton issued an opinion stating that "[t]he Employees' Compensation Act is not applicable to municipal corporations, and municipal corporations can not become 'subscribers' under the act." Op.Tex.Att'y Gen. (to the Industrial Accident Board, Sept. 23, 1913), 1912–1914 Tex.Att'y Gen.Biennial Rep. 437. This opinion was later confirmed by the Commission of Appeals in *City of Tyler v. Texas Employers' Ins. Ass'n*, 288 S.W. 409, 412–413 (Tex.Comm'n App.1926, holding approved), and its recommendation was adopted by the Supreme Court, presided over by C.M. Cureton, who had by that time become Chief Justice.

In 1936, article III, section 59 was added to the Texas Constitution, authorizing the Legislature to provide workers' compensation to state employees.[2] This amendment did not affect other political subdivisions, however. Op.Tex.Att'y Gen. No. O–779 (1939); Op.Tex.Att'y Gen. No. O–5315 (1943); Op.Tex.Att'y Gen. No. O–5360 (1943). In 1948, article III, section 60 of the Texas Constitution was adopted, authorizing the Legislature to enable counties to provide workers' compensation,[3] and in 1952, article III, section 61 was adopted, making similar provision for cities.[4] Finally, in 1962, article III, section 60 was amended to include political subdivisions other than counties, so that it also now applies to cities.[5] *See generally* 1

---

1. Act of March 29, 1913, 33rd Leg., R.S., ch. 179, 1913 Tex.Gen.Laws 429.

2. "Sec. 59. The Legislature shall have power to pass such laws as may be necessary to provide for Workmen's Compensation Insurance for such State employees, as in its judgment is necessary or required; and to provide for the payment of all costs, charges, and premiums on such policies of insurance; providing the State shall never be required to purchase insurance for any employee."

3. The current text of section 60 is quoted below, *infra* note 5. As originally adopted, it referred only to counties and not other political subdivisions. *See* Tex.H.J.R.Res. 30, 50th Leg., R.S., 1947 Tex.Gen.Laws 1191.

4. "Sec. 61. The Legislature shall have the power to enact laws to enable cities, towns, and villages of this State to provide Workmen's Compensation Insurance, including the right to provide

their own insurance risk for all employees; and the Legislature shall provide suitable laws for the administration of such insurance in the said municipalities and for payment of the costs, charges, and premiums on policies of insurance and the benefits to be paid thereunder."

(This is the first section 61 of article III. A second section 61, erroneously numbered the same, was adopted two years later.)

5. "Sec. 60. The Legislature shall have the power to pass such laws as may be necessary to enable all counties and other political subdivisions of this State to provide Workman's Compensation Insurance, including the right to provide its own insurance risk, for all employees of the county or political subdivision as in its judgment is necessary or required; and the Legislature shall provide suitable laws for the administration of such insurance in the counties or political subdivisions of this State and for the payment of the costs, charges and premiums on such policies of

George D. Braden et al., The Constitution of the State of Texas: An Annotated and Comparative Analysis 284–292 (1977).

The Legislature first allowed cities to provide workers' compensation benefits to their employees in 1969.[6] Cities were not required to provide such benefits until 1973.[7] This latter provision, which we refer to as the "Political Subdivisions Law", is now codified as chapter 504 of the Texas Labor Code.[8]

## C

In 1971, two years after cities were permitted to provide compensation benefits to their employees and two years before they were required to do so, the Legislature enacted what we will refer to as the "Anti–Retaliation Law".[9] The provision has never been amended but has since been recodified without substantive change as sections 451.001–.003 of the Texas Labor Code.[10] Although the former codification was in effect at all times material to this litigation, since its provisions are substantively identical to the new Labor Code sections, we refer to the latter, which state:

Sec. 451.001. DISCRIMINATION AGAINST EMPLOYEES PROHIBITED. A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A [the Texas Workers' Compensation Act]; or

(4) testified or is about to testify in a proceeding under Subtitle A.

Sec. 451.002. REMEDIES; BURDEN OF PROOF. (a) A person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation.

(b) An employee discharged in violation of Section 451.001 is entitled to reinstatement in the former position of employment.

(c) The burden of proof in a proceeding under this section is on the employee.

Sec. 451.003. INJUNCTION. A district court may restrain, for cause shown, a violation of Section 451.001.

■ Barfield and Prince argue that this statute waives governmental immunity because the word "person" includes governmental entities. Barfield and Prince cite no authority that would directly support their argument as of 1971, when the statute was first adopted. Forbidding retaliation against an employee for seeking monetary benefits under the Worker's Compensation Law presupposes that the employer is a subscriber. In 1971, providing compensation to city employees was permitted but not required, and in those circumstances we think it unlikely that the Legislature would have intended to include governmental entities within the scope of the Anti–Retaliation Law. Two other courts have reached this same conclusion, *Vaughan,* 856 S.W.2d at 258, and *Gates v. City of Fort Worth,* 567 S.W.2d 871, 873 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.), and no court, including the courts of appeals in the cases before us, has reached a contrary conclusion. While the argument against including political subdivisions as "persons" within the meaning of the 1971 Anti–Retaliation Law is not conclusive, the argument for doing so does not approach the standard that a waiver of governmental immunity be clear and unambiguous.

---

insurance and the benefits to be paid thereunder."

6. Act of Sept. 8, 1969, 61st Leg., 2d C.S., ch. 22, 1969 Tex.Gen.Laws 143 (formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8309e–2).

7. Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 17, 1973 Tex.Gen.Laws 187, 198–200 (formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8309h).

8. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 1250–1253.

9. Act of April 22, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex.Gen.Laws 884 (formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8307c).

10. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 1235–36.

■ Since 1993, there is a different argument for applying the Anti–Retaliation Law to governmental entities. The Code Construction Act, adopted by the Legislature in 1985, provides that in codes adopted by the 60th or a subsequent Legislature, the word "person" includes governmental entities. TEX.GOV'T CODE §§ 311.002, 311.005(2). This provision does not affect the construction of the Anti–Retaliation Law prior to 1993 because it was not part of a code to which the Code Construction Act applies, but in 1993 the Anti–Retaliation Law was recodified in the Labor Code, to which the Code Construction Act does apply. This recodification, however, was intended by the Legislature to be "without substantive change." TEX.LABOR CODE § 1.001(a).[11] Construing the recodification of the Anti–Retaliation Law to waive governmental immunity would be not only a substantive but a very significant change. Given the Legislature's express intent not to make such changes, we conclude that the Anti–Retaliation Law as recodified does not waive governmental immunity.

### D

■ In 1969, a few months before cities were permitted to provide compensation benefits to their employees, the Legislature passed the Texas Tort Claims Act.[12] Section 19 of the Act provided: "Any governmental unit carrying Workmen's Compensation Insurance or accepting the provisions of the Workmen's Compensation Act of the State of Texas shall be entitled to all of the privileges and immunities granted by the Workmen's Compensation Act of the State of Texas to private persons and corporations."[13] The provision has since been recodified, without substantive change, as section 101.028 of the Civil Practice and Remedies Code.[14]

The court of appeals in *Prince* concluded that this provision waives governmental im-munity from liability for violations of the Anti–Retaliation Law. The court reasoned that the provision gives governmental entities *only* those immunities granted by the Workers' Compensation Act to private persons and corporations, and since the latter are not immune from liability under the Anti–Retaliation Law, neither are governmental entities. The court of appeals in *Barfield* rejected this argument, and so do we. The flaw in the logic is that the plain language of the provision is a grant of additional privileges and immunities to governmental entities, not a waiver by limitation of those already held. At best, the waiver found by the court in *Prince* is implicit in section 101.028; it is too tenuous to be clear and unambiguous, as the law requires.

### E

■ As noted above, the Political Subdivisions Law, first enacted in 1973, required governmental entities to provide compensation benefits to their employees. Section 7(a) of the statute authorized local appropriations to pay "all costs, administrative expenses, charges, benefits, insurance, attorney fees, and awards authorized by this article."[15] Section 8 provided that "[t]he political subdivision attorney, his assistants, or outside counsel may represent the political subdivision in the bringing of defense or suits and proceedings in connection with workmen's compensation benefits".[16] Expressly contemplating that political subdivisions would be liable for compensation benefits and could be sued on compensation claims, the Political Subdivisions Law clearly and unambiguously waived governmental immunity for such claims.

The 1973 statute "adopted" various provisions of the Workers' Compensation Act and other statutes, but did not include the Anti–

---

11. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 990.

12. Act of May 14, 1969, 61st Leg., R.S., ch. 292, 1969 Tex.Gen.Laws 874.

13. *Id.* at 879.

14. "A governmental unit that has workers' compensation insurance or that accepts the workers'

compensation laws of this state is entitled to the privileges and immunities granted by the workers' compensation laws of this state to private individuals and corporations."

15. Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 17, 1973 Tex.Gen.Laws 187, 200.

16. *Id.*

Retaliation Law among them. There is no indication whatever in the statute that immunity from such claims was waived, and we therefore conclude that it was not. As noted above, two other courts have reached this same conclusion. *Vaughan,* 856 S.W.2d at 258; *Gates,* 567 S.W.2d at 873.

### F

In 1981, the Legislature amended the Political Subdivisions Law to "adopt" the Anti–Retaliation Law.[17] Specifically, section 3 of the amended statute provided in pertinent part:

(a) The following laws as amended or as they may hereafter be amended are adopted except to the extent that they are inconsistent with this article: ...

(5) [the Anti–Retaliation Law], except that if the city provides by Charter or ordinance for ultimate access to the district court for wrongful discharge, [the Anti–Retaliation Law] is not applicable;
....

(b) Provided that whenever in the above adopted laws the words "association," "subscriber," or "employer," or their equivalents appear, they shall be construed to and shall mean "a political subdivision."

Barfield and Prince argue that these provisions clearly evidence the Legislature's intent to waive governmental immunity for claims under the Anti–Retaliation Law.

The intent of Section 3, as amended in 1981, is not crystal clear. Section 3 does not expressly authorize, as it might, actions against governmental entities for violations of the Anti–Retaliation Law. Rather, it "adopts" the Law with a proviso in section 3(b) that certain words shall be construed to include political subdivisions. None of those words, however, appears in the Anti–Retalia-

tion Law, and the operative word "person" in that Law is not defined by section 3(b) to include political subdivisions. Nor is "person" an "equivalent" of "association," "subscriber," or "employer"; the latter terms are all persons, but "person" is broader than they are, including, for example, fellow employees as well as the employer and compensation carrier. In sum, the adoption of the Anti–Retaliation Law accompanied by the definitions in section 3(b) does not express a clear intent to waive immunity.

Nevertheless, Barfield and Prince argue that section 3 could have no other purpose but to waive immunity. This, however, is the very sort of putative purpose argument we rejected in *Duhart v. State,* 610 S.W.2d 740 (Tex.1980). There we construed a statute providing compensation benefits to state highway department employees,[18] which "adopted" a provision of the Workers' Compensation Law preserving a cause of action for exemplary damages for the death of an employee caused by the employer's gross negligence or by his intentional act or omission.[19] We held that this adoption of a provision of one statute into another did not clearly and unambiguously waive the State's immunity from liability for the alleged wrongful death of one of its employees. We reasoned that the exemplary damages provision did not create a cause of action in any event, but only preserved any existing action from preclusion by the Workers' Compensation Law. As for why the Legislature would have "adopted" the exemplary damages provision in a statute which has as its sole purpose the authorization of compensation claims against the State if it did not also intend to allow such an action against the State, we could only surmise that "[i]t may be that a future Legislature will waive the governmental im-

---

17. Act of May 31, 1981, 67th Leg., R.S., ch. 352, § 3, 1981 Tex.Gen.Laws 937, 937–938.

18. Act of May 20, 1937, 45th Leg., R.S., ch. 502, 1937 Tex.Gen.Laws 1352, *amended by* Act of May 28, 1969, 61st Leg., R.S., ch. 777, 1969 Tex.Gen. Laws 2301 (formerly codified as Tex.Rev.Civ. Stat.Ann. art. 6674s, now codified as Tex.Labor Code §§ 505.001–.059, Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex.Gen.Laws 987, 1254–1257).

19. Act of March 28, 1917, 35th Leg., R.S., ch. 103, § 5, 1917 Tex.Gen.Laws 269, 271 (formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8306, § 5, now codified as Tex.Labor Code § 408.001(b), Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex.Gen.Laws 987, 1175.) The provision now states: "This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence."

munity of the State for exemplary damages." *Id.* at 743. Whatever the reason may have been, the adoption of the exemplary damages provision was not a clear and unambiguous waiver of immunity.

*Duhart* is sufficiently analogous to the present cases as to require the same conclusion. Although the Anti–Retaliation Law creates a cause of action and does not merely preserve one, as did the exemplary damages provision examined in *Duhart*, "adoption" of that Law in the Political Subdivisions Law gives no clearer indication of legislative intent to waive immunity than did adoption of the exemplary damages provision in the statute providing compensation benefits to state highway workers. *But cf.* Op.Tex.Att'y Gen. No. JM–227 (1984) (stating that the Anti–Retaliation Law applies to state employees by virtue of its adoption in Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 16, 1973 Tex.Gen.Laws 187, 195–198, without discussing immunity).

Barfield and Prince argue that two other statutes construed to waive governmental immunity—specifically, the Wrongful Death Act and the Whistleblower Act—display no clearer intent than the Political Subdivisions Law. Actually, these statutes demonstrate the clarity of intent missing in the Political Subdivisions Law. Under the Wrongful Death Act, a "person" is liable for damages arising from an injury that causes death. TEX.CIV.PRAC. & REM.CODE § 71.002. "Person" is defined to include a corporation, and "corporation" is defined as "a municipal, private, public, or quasi-public corporation other than a county or a common or independent school district." *Id.* § 71.001(1). Not only does the Wrongful Death Act clearly state that immunity is waived, it limits the waiver to specified governmental entities. Under the Whistleblower Act, "[a] state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority." TEX.GOV'T CODE § 554.002. Such a public employee is entitled to sue for actual and exemplary damages, as well as other relief. *Id.* § 554.003. The statute clearly waives immunity; indeed, there would

be no purpose for the Act at all if immunity were not waived. Barfield and Prince also cite *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 382–383 (Tex.App.—San Antonio 1990, writ denied), holding that a city is a "person" liable for damages within the meaning of the Real Estate Fraud Law, TEX. BUS. & COM.CODE § 27.01, because the Code Construction Act directs that the word "person" in certain codes be construed to include governmental entities. TEX.GOV'T CODE § 311.005(2). We do not comment on the correctness of this holding in *Kerrville HRH*.

■ While *Duhart* forecloses the argument that the adoption of the Anti–Retaliation Law in the Political Subdivisions Law waives immunity, the exception in section 3(a)(5)—"if the city provides by Charter or ordinance for ultimate access to the district court for wrongful discharge"—is a further indication of legislative intent not presented in *Duhart*. While the relief available by "ultimate access to the district court for wrongful discharge" is not specified, it must be something. The Legislature surely contemplated by this phrase that city employees would have at least a minimal remedy for wrongful discharge. That minimal remedy, we think, must be reinstatement and back pay (subject, of course, to mitigation), for any lesser relief would altogether fail to address the harm of wrongful discharge. Thus it follows that the Legislature conditioned adoption of the Anti–Retaliation Law with respect to a city on its failure to provide for judicial relief of reinstatement and back pay for wrongful retaliation. Now assuming that the Legislature did not waive governmental immunity in the Anti–Retaliation Law, as we have already concluded, it is inconceivable that the Legislature intended to afford cities the option of either voluntarily waiving immunity by making a minimal remedy available by charter or ordinance, or suffering adoption of the Anti–Retaliation Law with no waiver of immunity. Otherwise, a city which chose not to provide "ultimate access to the district court" could thereby escape liability altogether. Why would the Legislature give cities the option of voluntarily waiving immunity or being forced not to waive it? It therefore follows that the Legislature must have intended by the Anti–Retaliation Law

to waive immunity for wrongful discharge for cities which did not waive immunity voluntarily.

■ While we can discern no other sensible construction of section 3(a)(5), this reasoning does not require the conclusion that the Legislature intended to waive immunity for all liability by the Anti–Retaliation Law. The Legislature could have intended, of course, to give cities the choice of waiving immunity for minimal relief or suffer a broader waiver, but it could also have intended that the voluntary and forced waivers be coextensive. The rule that a waiver of immunity must be clear and unambiguous applies to both the existence and the extent of the waiver. Absent a clear expression of intent to waive immunity completely, we do not construe section 3(a)(5) to waive immunity for relief other than what cities might themselves elect to provide to avoid application of the Anti–Retaliation Law. We therefore conclude that the Legislature intended by section 3 to waive cities' immunity from liability for reinstatement and back pay for violations of the Anti–Retaliation Law.

Our analysis is consistent with our opinion in *Texas Education Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994). There we held that because the Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code §§ 37.001–.011, expressly authorizes suits to challenge ordinances and statutes, requires that the responsible government entities be joined as parties, and provides for awards of attorney fees, the Act necessarily waives immunity from liability for such awards. Although the waiver of immunity was not expressed in so many words, we could discern no other reasonable intent in the Act's provisions. Similarly, the inference of waiver in the Political Subdivisions Law is unavoidable.

### G

■ In 1989, the Legislature amended section 3 of the Political Subdivisions Law to read in pertinent part as follows:

(a) The following provisions of the Texas Workers' Compensation Act ... are

adopted except to the extent that they are inconsistent with this article.... [The Anti–Retaliation Law is not listed.]

(b) Provided that whenever in the above adopted law the word "employer" appears, it shall be construed to and shall mean "a political subdivision."

(c) [The Anti–Retaliation Law] is adopted except to the extent it is inconsistent with this article.

(d) A person may not bring an action for wrongful discharge under both [the Anti–Retaliation Law] and [the Whistleblower Act].

(e) Nothing in this Act or the Texas Workers' Compensation Act ... shall be construed to authorize causes of action or damages against a political subdivision or employee of a political subdivision beyond the actions and damages authorized by the Texas Tort Claims Act....[20]

As recodified in the Labor Code in 1993, the Law now states in pertinent part:

Sec. 504.002. APPLICATION OF GENERAL WORKERS' COMPENSATION LAWS; LIMIT ON ACTIONS AND DAMAGES.

(a) The following provisions ... apply to and are included in this chapter except to the extent that they are inconsistent with this chapter: ...

(8) Chapter 451 [the Anti–Retaliation Law].

(b) For purpose of applying the provisions listed by Subsection (a) to this chapter, "employer" means "political subdivision."

(c) Neither this chapter nor [the Workers' Compensation Act] authorizes a cause of action or damages against a political subdivision or an employee of a political subdivision beyond the actions and damages authorized by [the Tort Claims Act].

Sec. 504.003. ELECTION OF REMEDIES. A person may not bring an action for wrongful discharge under both [the

---

20. Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 15.47, 1989 Tex.Gen.Laws 1, 113 (formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8309h, § 3).

Anti–Retaliation Law] and [the Whistleblower Act].[21]

As noted above, the recodification of the Labor Code was intended by the Legislature to be "without substantive change." TEX.LABOR CODE § 1.001.[22]

The court of appeals in *Barfield* concluded that these provisions of the Political Subdivisions Law are internally conflicting, and we agree.

In the first place, section 504.002(a)(8) of the Labor Code provides that the Anti–Retaliation Law applies to and is included in the Political Subdivisions Law, but section 504.002(b) states that in applying the Anti–Retaliation Law, "employer" means "political subdivision". As with the 1981 version of the Political Subdivisions Law, "political subdivision" is not equated with "person", which has always been the operative word of the Anti–Retaliation Law. Absent this equation, it is not entirely clear whether the Legislature intended to prohibit political subdivisions from retaliatory discharge. To complicate matters further, the intended nonsubstantive recodification of these sections in the Labor Code applies section 504.002(b) equating "employer" and "political subdivision" to all provisions in section (a), which include the Anti–Retaliation Law, while the corresponding provision in the 1989 version of the Political Subdivisions Law, section 3(b), does not apply to the Anti–Retaliation Law referenced in section 3(c).

Even more troubling, both the 1989 and 1993 versions of the Political Subdivisions Law provide that neither it nor the Workers' Compensation Act authorizes actions or damages against governmental entities except to the extent allowed by the Tort Claims Act. The Tort Claims Act would not allow an action for violation of the Anti–Retaliation Law, but it also would not allow a claim for workers' compensation unless the claim were based on a government employee's wrongful or negligent use of a motor-driven vehicle or motor-driven equipment, or on the condition or use of real or tangible personal property. TEX.CIV.PRAC. & REM.CODE § 101.021. It

seems quite implausible that the Legislature would have allowed public employees compensation benefits since 1973, and then in 1989 would have greatly restricted those benefits to the very limited circumstances in which the Tort Claims Act waives immunity without any expression of intent to do so. Yet this is the import of a literal reading of the Political Subdivisions Law.

Finally, both the 1989 and 1993 versions of the Political Subdivisions Law require an election between an action for a violation of the Anti–Retaliation Law and an action for a violation of the Whistleblower Act. Since immunity has clearly been waived for the latter statute, as we noted above, the requirement of an election suggests that immunity is also waived for the former, just as the exception in section 3(a)(5) of the 1981 version suggested a similar waiver. The Anti–Retaliation Law and the Whistleblower Act are not, of course, coextensive, but to the extent they might both apply in a situation, it would make little sense to require an employee to elect between an action barred by immunity and one not barred.

This election-of-remedies provision added to the 1989 version of the Political Subdivisions Law persuades us, in the end, that the Legislature must have intended to waive political subdivisions' immunity for liability imposed by the Anti–Retaliation Law. For essentially the same reasons that cause us to conclude that the 1981 version of the statute intended a waiver of immunity, we find the same inference equally inescapable in the 1989 version of the statute. Lacking in the later provision, however, is any indication that the waiver should be limited. Unlike the minimal relief cities might afford in section 3(a)(5) of the 1981 statute, the Whistleblower Act alternative in the 1989 statute authorizes actual and punitive damages in addition to reinstatement and back pay. TEX.GOV'T CODE § 554.003. Applying the same analysis we used to construe the 1981 statute, we would be constrained to conclude that the Legislature intended by the 1989 statute to waive immunity completely.

**21.** Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex.Gen.Laws 987, 1250.

**22.** Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex.Gen.Laws 987, 990.

As we have already discussed, however, the later statute contains a limitation not found in the earlier one—that only causes of action and damages authorized by the Texas Tort Claims Act are permitted. While we have described some of the difficulties which attend the construction of this limitation, it cannot be ignored entirely. With respect to the adoption of the Anti–Retaliation Law, it plainly limits damages to those for which liability is waived by the Tort Claims Act. That Act does not permit punitive damages, TEX.CIV.PRAC. & REM.CODE § 101.024, and caps actual damages, *id.*, § 101.023. We read the 1989 Political Subdivisions Law to impose the same limits on damages recoverable against the governmental entities to which it applies for violations of the Anti–Retaliation Law. Whether the restriction in the Political Subdivisions Law to "actions and damages authorized by the Texas Tort Claims Act" further limits application of the Anti–Retaliation Law to governmental entities is an issue that has not been raised in the cases before us and need not be addressed.

We conclude that the 1989 Political Subdivisions Law, recodified in 1993, waives immunity from liability for actual damages, as well as for reinstatement and back pay, subject to the limitations of the Tort Claims Act.

## H

█ Finally, as the waiver of immunity is different in the 1981 and 1989 versions of the Political Subdivisions Law, we must decide which applies in the cases before us. Barfield and Prince were both injured on the job and terminated before 1989, but the trial courts in both cases did not render judgment until after 1989. The 1989 statute provides: "The change in law made by this Act applies only to an injury for which the date of injury is on or after the effective date of this Act."[23] With respect to the Anti–Retaliation Law, "injury" is termination or other discriminatory conduct. Accordingly, both cases before us are governed by the 1981 Political Subdivisions Law, which permitted only reinstatement and back pay, but did not limit an award of back pay.

## III

In *Barfield*, the court of appeals reversed the summary judgment rendered for the City and remanded the case for trial. We agree that this is the correct result in the case and thus affirm the judgment of the court of appeals.

In *Prince*, the court of appeals affirmed a judgment awarding $100,000 actual and $1 million punitive damages against the City. For the reasons we have explained, the City is immune from liability for punitive damages and for any actual damages except back pay, subject to mitigation. Prince introduced evidence of damages other than back pay, and the jury was not instructed to confine its consideration to back pay. The City's insistence on immunity was, in this case, sufficient to preserve error. Accordingly, the judgment of the court of appeals is reversed and the case remanded for a new trial. As the case must be retried, we need not address the other complaints raised by the City concerning the exclusion of deposition testimony and the award of prejudgment interest.

GONZALEZ, Justice, dissenting.

As the Court recognizes, the City of La Porte is immune from liability for the retaliatory discharge of its employees unless that immunity has been waived by the legislature. It may be good public policy to subject governmental entities to liability for retaliating against their employees who file workers compensation claims, but this decision rests solely with the legislature. For the legislature to waive sovereign immunity, it must affirmatively do so by clear and unambiguous language. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 447 (Tex.1995) (Gonzalez, J., concurring in part and dissenting in part); *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.1993); *Mount Pleasant Indep. Sch. Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex.1989); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980). Because the legislature has not met this standard, I would reverse the judgment of the court of appeals

---

**23.** Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 17.18(c), 1989 Tex.Gen.Laws 1, 122.

and render judgment in both cases that plaintiffs take nothing.