TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00224-CV







The State of Texas; The Texas Department of Mental Health and Mental Retardation;


and Kerrville State Hospital/Anand Mehendale, M.D.; William F. Schultheis,


D.O.; and Terry L. Parvin, D.O., Appellants



v.



Anand Mehendale, M.D.; William F. Schultheis, D.O.; and Terry L. Parvin, D.O./


The State of Texas; The Texas Department of Mental Health and Mental


Retardation; Kerrville State Hospital; and Brenda C. Roche, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-13835, HONORABLE PAUL DAVIS, JUDGE PRESIDING







 Three physicians (1) ("the Doctors") sued the State (2) pursuing various causes of action
stemming from the termination of their employment from Kerrville State Hospital. The State filed
a motion to dismiss three of the claims, which the trial court granted in part and denied in part. 
The court refused to dismiss the Doctors' causes of action for violating the Texas Medical Practice
Act (MPA) and for breach of contract, but did dismiss the Doctors' wrongful-termination claim. 
The State now brings an interlocutory appeal to challenge the trial court's refusal to dismiss the
MPA claim, asserting that there has been no waiver of sovereign immunity. The State also
appeals the denial of its motion to dismiss the Doctors' breach-of-contract claim, urging that the
bylaws under which the Doctors sue do not create any contractual rights, and alternatively that
if contractual rights do arise, sovereign immunity has not been waived. By cross-appeal, the
Doctors challenge the dismissal of their wrongful-termination claim. Because the Doctors did not
include that cause of action in their most recent amended petition, however, we will dismiss their
cross-appeal. We will reverse the trial court's order as to the MPA claim and render judgment
dismissing that cause. On the breach of contract claim, we will reverse the trial court's judgment
and remand with instructions to allow the Doctors an opportunity to amend their pleadings.


Factual and Procedural Background


 The Doctors are former employees of Kerrville State Hospital. While on staff
there, they participated, pursuant to the Medical Practice Act, in a peer review investigation of
a fellow doctor, David Bryson, who was suspected of being responsible for the death of a patient
under his care. The Doctors recommended terminating Bryson, but the State ultimately chose to
reinstate him to his position at Kerrville State Hospital.

 After the investigation of Bryson was concluded, the Doctors themselves were
investigated by the Texas Department of Health for unrelated allegations of misconduct concerning
alteration of medical and government records. The Doctors contend the investigation was carried
out in contravention of the disciplinary procedures provided for by the Medical Staff Bylaws ("the
Bylaws") of Kerrville State Hospital. Following the investigation, the Doctors were terminated
for their conduct. The Doctors believe that the investigation and their termination were carried
out to retaliate against them for their role in the investigation of Bryson.

 The Doctors sued the State pleading seven causes of action. (3) They sought more
than $25.6 million in damages for violations of the Whistleblower Act (4) and the MPA, (5) as well as
claims for defamation, intentional infliction of emotional distress, and breach of contract. As an
alternative to their breach-of-contract claim, the Doctors sought a declaratory judgment to define
their rights under the Bylaws of Kerrville State Hospital.

 Pleading various jurisdictional bars, the State filed a motion to transfer venue and
to dismiss all of the claims except the request for declaratory judgment. The trial court's order
of April 8, 1999 indicates that the State withdrew its motion to transfer venue and its motion to
dismiss the claims for intentional infliction of emotional distress, defamation, and violation of the
Whistleblower Act. As to the other three claims, the trial court granted the motion to dismiss the
wrongful-termination claim and denied the motions to dismiss the Doctors' MPA and breach-of-contract claims. The State brought this interlocutory appeal urging that the trial court erred by
refusing to dismiss the MPA and contract claims. On cross-appeal, the Doctors claim the court
erred in dismissing their wrongful-termination claim. Still pending in the trial court are the
remaining claims for violation of the Whistleblower Act, defamation, intentional infliction of
emotional distress, and declaratory judgment.


Discussion


Jurisdiction

 The Doctors claim that sovereign immunity is an affirmative defense and therefore
does not implicate the subject matter jurisdiction of the court. Accordingly, they argue that the
State is not entitled to an appeal of the trial court's order denying its plea to the jurisdiction. We
disagree. The Texas Supreme Court squarely rejected this argument in a recent opinion when it
wrote, "[s]ince as early as 1847, the law in Texas has been that absent the state's consent to suit,
a trial court lacks subject matter jurisdiction. A party may contest a trial court's subject matter
jurisdiction by filing a plea to the jurisdiction." Texas Dep't of Transp. v. Jones, 43 Tex. Sup.
Ct. J. 143, 144 (Dec. 2, 1999) (per curiam) (citations omitted).

 The State now appeals the denial of its motion to dismiss for lack of jurisdiction. 
Although ordinarily only final orders are appealable, an appeal of an interlocutory order may be
brought where the trial court has denied a plea to the jurisdiction raised by a governmental unit. 
See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2000). Whether a trial court
has subject matter jurisdiction is a question of law requiring de novo review. See Michael v.
Travis County Housing Auth., 995 S.W.2d 909, 912 (Tex. App.--Austin 1999, no pet.).


Medical Practice Act Claim

 The State appeals the denial of its plea to the jurisdiction and urges that the
Doctors' MPA claim should be dismissed because the Act does not contain a waiver of sovereign
immunity. Immunity from suit bars an action against the State unless the State expressly consents
to the suit. See Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). Legislative
consent for suit or other waiver of sovereign immunity must be by clear and unambiguous
language. See id. Whether a statute reveals a clear and unambiguous waiver of immunity is a
question of law. See Southwest Tex. State Univ. v. Enriquez, 971 S.W.2d 684, 686 (Tex.
App.--Austin 1998, pet. denied).

 The Doctors argue that 1987 amendments to the MPA unequivocally waived
immunity. Participation and reporting in the peer review process were optional until 1987, when
the legislature amended the MPA to make the process mandatory. See Act of June 1, 1987, 70th
Leg., R.S., ch. 596, sec. 18, § 5.06, 1987 Tex. Gen. Laws 2333. Those 1987 changes added the
language now codified in section 160.012 of the Occupations Code, which provides a cause of
action "against a health care entity . . . that suspends or terminates the employment of the person
. . . for reporting to the board." Tex. Occ. Code Ann. § 160.012 (West 2000).

 "Health care entity" is defined by the MPA in relevant part as:



(A) a hospital licensed under Chapter 241 or 577, Health and Safety Code;


(B) an entity, including a health maintenance organization, group medical practice,
nursing home, health science center, university medical school, or other health
care facility, that:


 (i) provides medical care or health care services; and


 (ii) follows a formal peer review process to further quality medical care or
health care.



Id. § 151.002(a)(5). (6) The Doctors note that this section does not explicitly exempt the State from
suit, and the definition of "health care entity" is broad enough to include institutions like Kerrville
State Hospital. The legislature could have specifically excluded the State and its institutions from
the definition and chose not to; therefore, the Doctors infer a waiver of sovereign immunity from
the language of the statute. They urge that application of the doctrine of sovereign immunity to
the MPA would weaken the peer review process and protections for those who participate in it,
a result which is contrary to the legislature's goals in making the MPA peer review provisions
mandatory in the first place.

 The State correctly points out that the Doctors' argument turns the doctrine of
sovereign immunity on its head. The Doctors want us to assume that, under the MPA, sovereign
immunity has been waived unless the legislature includes explicit language to the contrary. In
fact, the opposite proposition is true. It is the waiver of sovereign immunity that must be clear
and unambiguous. See Federal Sign, 951 S.W.2d at 405; University of Tex. Med. Branch v. York,
871 S.W.2d 175, 177 (Tex. 1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980).

 The legislature certainly knows how to waive the State's immunity from suit, and
the State has cited us to several examples where it has done so. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.025 (West 1997) ("Sovereign immunity to suit is waived and abolished" under
Texas Tort Claims Act); Tex. Gov't Code Ann. § 554.0035 (West Supp. 2000) (public employee
alleging violation of Whistleblower Act "may sue the employing state or local governmental
entity. . . . Sovereign immunity is waived and abolished to the extent of liability . . . for a
violation of this chapter."); Tex. Gov't Code Ann. § 2007.004 (West Supp. 2000) ("Sovereign
immunity to suit and liability is waived and abolished to the extent of liability created" by Private
Real Property Rights Preservation Act); see also Texas Dep't of Health v. Ruiz, 960 S.W.2d 714,
719 (Tex. App.--El Paso 1997, pet. denied) (citing other "clear and unambiguous" waivers of
sovereign immunity). Such explicit language is absent in the statute challenged here. We find
no clear and unambiguous waiver of sovereign immunity in the MPA.

 Although the present suit was originally brought in December 1998, a 1999
amendment to the MPA bolsters our conclusion that sovereign immunity has not been waived. 
The amendment, effective June 16, 1999, provides that "[t]his section does not impose liability
or waive immunity for a hospital district or hospital authority that has common-law, statutory, or
other immunity." Act of May 21, 1999, 76th Leg., R.S., ch. 908, sec. 2, 1999 Tex. Gen. Laws
3622, 3622. (7) Though it was not in effect when the cause of action before us arose, this
amendment indicates that our holding is in line with the legislature's intent that sovereign
immunity not be waived under the MPA. We reverse the trial court's denial of the State's plea
to the jurisdiction and render judgment dismissing the Doctors' MPA claim.


Breach-of-Contract Claim

 The Doctors claim that the Bylaws of Kerrville Hospital constitute an employment
contract between them and the hospital. They further claim that by terminating them the hospital
violated the terms of those Bylaws, and they seek damages for the breach. The State denies that
the Bylaws constitute a contract and argues alternatively that, even if the Bylaws are a contract, 
the State has not waived its immunity from suit. The State appeals the denial of its motion to
dismiss on those grounds.

 As explained by the supreme court in Federal Sign, sovereign immunity protects
the state from lawsuits for damages, absent legislative consent to sue the state. See 951 S.W.2d
at 405. The term "sovereign immunity" actually embraces two principles: immunity from suit
and immunity from liability. See id. Immunity from suit bars a legal action against the State,
even if the State acknowledges liability to the asserted claim, unless the legislature has given
express consent to sue. See id. Immunity from liability provides that, even if the legislature has
given consent to sue, the State may not be adjudged liable for the claim asserted. See id. When
the State enters into a contract with a private entity, it gives up its immunity from liability, but
not its immunity from suit. See id.

 Federal Sign recognized that there "may be other circumstances where the state
may waive its immunity by conduct other than simply executing a contract so that it is not always
immune from suit when it contracts." Id. at 408 n.1. Recognizing the significance of that
footnote, this Court has held that Federal Sign leaves room for the State to waive its immunity
with regard to a particular contract by its conduct. See Aer-Aerotron, Inc. v. Texas Dep't of
Transp., 997 S.W.2d 687, 691 (Tex App.--Austin 1999, pet. filed) (en banc); Little-Tex Insulation
Co. v. General Servs. Comm'n, 997 S.W.2d 358, 364 (Tex App.--Austin 1999, pet. filed). We
have held, for example, that the State's acceptance of a benefit under a contract without paying
for the benefit may waive immunity from suit. See Little-Tex, 997 S.W.2d at 364; Texas Natural
Resources Conservation Comm'n v. IT-Davy, 998 S.W.2d 898, 902 (Tex. App.--Austin 1999, pet.
filed). We have also held that the State did more than merely enter into a contract (and so waived
liability) where the State fully implicated itself in the performance of a contract. See Aer-Aerotron, 997 S.W.2d at 691-692.

 In their Second Amended Original Petition, the Doctors allege:


The Medical Staff Bylaws of [Kerrville State Hospital] governs [sic] the
relationship between [the Doctors] and [the State] and constitutes [sic] a contractual
agreement between [the Doctors] and [the State]. [The State] disciplined and
terminated [the Doctors] in complete derogation of the procedures established for
the discipline of medical staff members set forth in the Medical Staff Bylaws. As
such, [the State has] breached [its] agreement with [the Doctors] under the Medical
Staff Bylaws. Such breach has caused [the Doctors] to incur damages within the
jurisdictional limits of the court.



 In their response to the State's motion to dismiss, the Doctors state:



[T]he Federal Sign decision narrowed the Court's holding to leave open the
possibility of suit against the State by parties who have tendered performance or
performed services on State property under a contract with the State. The
[Doctors'] employment was governed by the Medical Staff Bylaws which [the
State] clearly breached when terminating [the Doctors]. The facts of Federal Sign
are distinguishable from the matters in this case, and thus do not apply.



Even accepting the allegations in the Doctors' pleadings as true, and assuming without deciding
that the Bylaws constitute a contract and that the State's actions constituted a breach of that
contract, the Doctors have pleaded no facts that point to a waiver of immunity from suit. They
have alleged neither that the legislature has expressly waived immunity from suit nor that the State
engaged in the kind of conduct that might otherwise constitute waiver. Accordingly, we will
reverse the trial court's denial of the State's motion to dismiss; nonetheless, the Doctors must be
given an opportunity to replead and attempt to state a cause of action upon which relief can be
granted. (8) See City of Austin v. L. S. Ranch, Ltd., 970 S.W.2d 750, 753-54 (Tex. App.--Austin
1998, no pet.). Accordingly, we will remand this portion of the cause to the trial court.


Wrongful-Termination Claim

 On cross-appeal, the Doctors urge that the trial court erroneously granted the
State's motion to dismiss their wrongful-termination claim. Appeal may be taken from an
interlocutory order that grants a plea to the jurisdiction by a governmental unit. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(8). However, the Doctors omitted this ground of recovery
in their Second Amended Original Petition, filed on April 2, 1999. An amended pleading replaces
and supersedes the previous pleading, and once an amended pleading is filed, earlier pleadings
are no longer part of the proceedings. See Tex. R. Civ. P. 65; Drake Ins. Co. v. King, 606
S.W.2d 812, 817 (Tex. 1980). "[W]hen a plaintiff fails to include in his amended petition a cause
of action that he had included in a previously filed petition, that cause of action . . . is no longer
before the trial court." State v. Tamminga, 928 S.W.2d 737, 740 (Tex. App.--Waco 1996, no
writ); see also Little-Tex, 997 S.W.2d at 360-61.

 The order being appealed was signed by the trial judge on April 8, 1999, which
means that the Second Amended Petition was the live pleading before the court when it ruled. 
Although the trial court's order refers to the Doctors' First Amended Original Petition and
purports to dismiss with prejudice the wrongful-termination claim contained therein, in fact, that
cause of action had been dismissed by the Doctors themselves when they dropped it from their
most recent pleading. We therefore dismiss the Doctors' cross-appeal on this claim. (9)


Conclusion


 Because there has been no clear and unambiguous waiver of sovereign immunity
under the MPA, we reverse the trial court's order and render judgment granting the State's motion
to dismiss that claim for lack of jurisdiction. We further reverse the trial court's order denying
the State's motion to dismiss the Doctors' breach-of-contract claim, and we remand that portion
of the cause for further proceedings to allow the Doctors an opportunity to amend their pleadings. 
Finally, we dismiss the Doctors' cross-appeal complaining of the order dismissing their wrongful-
termination cause of action because that claim was not included in the live pleading in this case.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part; Dismissed in Part

Filed: January 27, 2000

Do Not Publish
1. Anand Mehendale, M.D., William F. Schultheis, D.O., and Terry L. Parvin, D.O., are
appellees/cross-appellants in this case.
2. Appellants/cross-appellees in this case are The State of Texas, The Texas Department
of Mental Health and Mental Retardation, and Kerrville State Hospital. We will refer to them
collectively as "the State." David Lyman Bryson was named a defendant on the original petition
but omitted from the first amended petition. Brenda C. Roche is a cross-appellee because she is
named as defendant in the first and second amended petitions, but she is not an appellant because
she did not file a notice of appeal.
3. The Doctors filed an Original Petition and two Amended Petitions, and the claims
asserted varied slightly in each pleading. Declaratory judgment was not sought in the Plaintiffs'
Original Petition, and the wrongful-termination claim was not included in the Second Amended
Petition. The First Amended Petition is the only pleading that included all seven grounds of
recovery.
4. Chapter 554 of the Government Code, popularly called the Whistleblower Act, provides:


 A public employee whose employment is suspended or terminated or
who is subjected to an adverse personnel action [for reporting a violation of
law] is entitled to sue for:


 (1) injunctive relief;


 (2) actual damages;


 (3) court costs; and


 (4) reasonable attorney fees.


Tex. Gov't Code Ann. § 554.003(a) (West Supp. 2000).
5. The MPA was recodified effective September 1, 1999, moving from Vernon's Revised
Civil Statutes to Subtitle B of the Occupations Code. The relevant portions of the MPA remain
unchanged, and the Act provides: "A person has a cause of action against a health care entity,
or an owner or employee of a health care entity, that suspends or terminates the employment of
the person or otherwise disciplines or discriminates against the person for reporting to the board." 
Tex. Occ. Code Ann. § 160.012(b) (West 2000). 
6. Mental hospitals such as Kerrville State Hospital are subject to chapter 577 of the Health
and Safety Code, which specifically states that "[a] mental health facility operated by the Texas
Department of Mental Health and Mental Retardation or a federal agency need not be licensed
under this chapter." Tex. Health & Safety Code Ann. § 577.002 (West Supp. 2000). While this
leaves room for voluntary licensing, there is nothing in the record indicating whether Kerrville
State Hospital is, in fact, licensed. More likely, the Doctors rely on the definition in section
151.002(a)(5)(B), characterizing Kerrville State Hospital as an entity providing health care or
medical services that also follows a peer review process.
7. This is the same legislature that enacted the codification of the MPA, moving it from
Vernon's Revised Civil Statutes to the Occupations Code. The amendment was not included in
the recodification. However, the amendment is still valid law because the Government Code
provides that the "repeal of a statute by a code does not affect an amendment . . . of the statute
by the same legislature that enacted the code. The amendment . . . is preserved and given effect
as part of the code provision that revised the statute so amended." Tex. Gov't Code Ann.
§ 311.031(c) (West 1998).
8. As an alternative form of relief sought in their response to the State's motion to dismiss,
the Doctors asked the trial court to abate their contract claim to permit them the opportunity to
obtain from the legislature a resolution waiving sovereign immunity. See Tex. Civ. Prac. & Rem.
Code Ann. § 107.002 (West 1997). The trial court overruled the State's motion to dismiss and
did not address the Doctors' motion to abate. With no final order on this issue, we may not
properly consider in this interlocutory appeal whether the trial court should have abated the
Doctors' contract claim.
9. Because that ground of recovery had been voluntarily abandoned by the Doctors, the
trial court had no need to address it, and the language in the court's order dismissing the claim
with prejudice was apparently surplusage. On appeal, neither party has questioned whether the
wrongful-termination claim was dismissed with prejudice or whether it may be re-instituted in a
later pleading, so we need not consider that question here.



in, D.O., are
appellees/cross-appellants in this case.
2. Appellants/cross-appellees in this case are The State of Texas, The Texas Department
of Mental Health and Mental Retardation, and Kerrville State Hospital. We will refer to them
collectively as "the State." David Lyman Bryson was named a defendant on the original petition
but omitted from the first amended petition. Brenda C. Roche is a cross-appellee because she is
named as defendant in the first and second amended petitions, but she is not an appellant because
she did not file a notice of appeal.
3. The Doctors filed an Original Petition and two Amended Petitions, and the claims
asserted varied slightly in each pleading. Declaratory judgment was not sought in the Plaintiffs'
Original Petition, and the wrongful-termination claim was not included in the Second Amended
Petition. The First Amended Petition is the only pleading that included all seven grounds of
recovery.
4. Chapter 554 of the Government Code, popularly called the Whistleblower Act, provides: